**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

_____        :
                                            :
In Re:                                      :
                                            :   Chapter 11
ROCHDALE SECURITIES, LLC                    :
                                            :   Case No. 14-51485 (AST)
         Debtor.                            :
_____         :

**OBJECTION OF PERSHING LLC TO DEBTOR'S FIRST MODIFIED PLAN OF REORGANIZATION**

Interested party Pershing LLC, by its attorneys, Law Offices of Barbara Katz, Esq. and Bressler, Amery & Ross, P.C., for its objection to the Debtor's First Modified Plan of Reorganization Under Chapter 11 of the Bankruptcy Code ("Modified Plan"), states as follows:

**Preliminary Statement**

1. Pershing objects to the Modified Plan on the basis that it is unfeasible, premature, inadequate and prejudicial. These objections emanate essentially from unresolved litigation between Pershing and the Debtor which holds the potential to deprive the Debtor of the funds needed to implement the Modified Plan.

2. Pershing is an interested party having a potential recovery stemming from pending litigation against the Debtor in the Supreme Court of the State of New York, County of New York, Index No. 651604/2016. The litigation challenges a net award of $7,678,074.52 (the "Award") made to the Debtor in an arbitration conducted under the auspices of the Financial Industry Regulatory Authority ("FINRA").

3. Earlier this year, Pershing paid the Award to the Debtor, net of an agreed setoff. At the same time, it has reserved its rights to pursue a reversal of the Award by filing a petition

to vacate the Award in the Supreme Court of the State of New York, County of New York. The application was heard on June 30, 2016. A determination is anticipated shortly.

4. The Debtor filed its original Disclosure Statement and proposed Plan of Reorganization on May 12, 2016. Both the original Plan and the Modified Plan are essentially funded in the entirety with the proceeds of the Award. The original Disclosure Statement and proposed Plan filed by the Debtor on May 12, 2016 assumed, in the face of precedent to the contrary, that the Award will stand in full. The Modified Plan relies on the same assumption. But unless the Debtor's unjustified expectations are proven correct, there is no question that the Plan remains doomed to failure, as there will be insufficient funds for its implementation.

5. Following Pershing's objection to, and a June 17, 2016 hearing on, the initial Disclosure Statement, this Court directed that the Debtor file a revised Disclosure Statement and Plan of Reorganization. The Court deferred the filing of the revisions and any objections until after the June 30, 2016 argument in the New York court, so that the parties and the Court might have the benefit of any determinations or statements emanating from the New York hearing.

6. The New York court heard argument as scheduled on June 30, 2016. The parties informed the court of this Court's intention to hold a confirmation hearing on August 19, 2016. We noted that the New York determination could materially affect the terms and viability of any Plan.[1] The dependence of the Modified Plan on the New York outcome is incontrovertible, as both the proposed initial Plan and the current Modified Plan assume that the Award will be confirmed in full. The Modified Plan allocates every penny of the Award to various

---

[1] This Court subsequently adjourned the confirmation hearing and related matters to August 26, 2016. We have informed the New York court of this change.

2

constituencies and leaves the pre-Petition equity ownership structure essentially in place without an infusion of new value, effectively substituting the Award for this requirement.

7. Throughout these proceedings, the Debtor has expressed and relied upon its overconfidence that the Award was proper and will survive the New York process undiminished. Indeed, the Debtor has gone so far as to move for sanctions in both the New York court and this Court based upon its self-serving view that the petition to vacate the Award is frivolous.

8. Following argument on June 30, 2016, the New York court reserved decision on the petition to vacate and the cross-application to confirm the Award. Significantly, however, the court debunked the myth propagated by the Debtor that the petition to vacate was frivolous and interposed for improper purposes. As detailed below, the court summarily denied the Debtor's request for sanctions, suggested that the Debtor's sanctions request was itself sanctionable and reprimanded the Debtor's counsel on the record. A copy of the transcript is annexed hereto as Exhibit A.

9. On July 8, 2016, the Debtor filed its First Amended Disclosure Statement and its Modified Plan. Pershing objected to the proposed Amended Disclosure Statement, primarily because the amendment did not fully cure the deficiencies that led to the rejection of its predecessor. This Court initially forwent a second formal hearing on the disclosure statement, but more recently combined the issue for hearing with the Modified Plan.

10. For the reasons set forth below, Pershing presses its objection to the Modified Plan, chiefly because it lacks feasibility and is, at the very least, premature and prejudicial in the absence of a final determination from the New York courts on the Award. While the New York court reserved decision on the issue of vacatur, the transcript reveals the court's concurrence that

Pershing has raised serious and potentially successful issues, particularly those relating to New York's public policy upholding consequential damages exclusion clauses where, as here, a defendant was acting in its own economic self-interest. To the extent that this Court expedited confirmation proceedings with the expectation that the Award will emerge unaltered, the denial of the sanctions motion and the related comments from the New York Justice should give pause.

## The Legal Standards

11. Proposed plans of reorganization must be viable in order to prevent the "confirmation of visionary schemes." 7 COLLIER ON BANKRUPTCY ¶ 1129.02[11] (16th ed. rev. 2014). Among other considerations, a plan cannot be confirmed if such confirmation is "likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan." 11 U.S.C. §1129(a)(11).

12. Section 1129(a)(11) of the Bankruptcy Code, commonly referred to as the "feasibility test," requires a finding by the court that confirmation of the plan is not likely to be followed by liquidation or the need for further financial reorganization. 11 U.S.C. §1129(a)(11). As one court succinctly explained:

> The purpose of Section 1129(a)(11) is manifold: 1) to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan that the debtor can possibly attain after confirmation, 2) to prevent an abuse of the reorganization process by the confirmation of a plan of a debtor likely to return to bankruptcy, and 3) to promote the willingness of those who deal with post-confirmation debtors to extend the credit that such companies frequently need.

*In re Belco Vending, Inc*., 67 B.R. 234, 236 (Bankr. D. Mass. 1986) (internal citations omitted).

13. A plan of reorganization is not feasible when, if implemented without modification, it is "likely to be followed by . . . liquidation, or the need for further financial

reorganization, of the debtor or any successor to the debtor under the plan," in violation of Section 1129 of the Bankruptcy Code. 11 U.S.C. §1129(a)(11). The "feasibility" standard encompassed in Section 1129(a)(11) examines, among other things, the proponent's ability to consummate the provisions of the proposed plan. *See In re Lakeside Global II, Ltd.*, 116 B.R. 499, 506 (Bankr. S.D. Tex. 1989) ("[t]his definition [of feasibility] has been slightly broadened and contemplates whether [(a)] the debtor can realistically carry out its Plan,…and [(b)] whether the Plan offers a reasonable prospect of success and is workable").

14. Obviously, nothing bears more on the feasibility of a plan than the Debtor's ability to fund it. *See In Re Investment Company of the Southwest, Inc.,* 341 B.R. 298 (10th Cir. B.A.P. 2006). "To be feasible for purposes of section 1129(a)(11), a plan must take into account the possibility that a potential creditor may, following confirmation, recover a large judgment against the debtor." *In re Harbin,* 486 F.3d 510, 517 (9th Cir.2007).

**These Standards Compel Rejection of the Modified Plan**

15. This is a paradigm case for rejecting or at least deferring confirmation of a plan in the interests of feasibility and efficiency. No one can dispute that the plan, as structured, depends upon use of the Award in its current amount. Even partial vacatur on the two issues implicating public policy – consequential damages and attorneys' fees – would deprive the Debtor of close to 50 percent of the Modified Plan's funding, impairing creditors and forcing everyone back to the drawing board.[2] Pershing is also entitled to fair treatment, as the implementation of the Modified Plan would hinder, if not obliterate, its right to recovery of any portion of the Award vacated by the New York courts. The settlement reached by the parties on

---

[2] At the approximate time that the Award was paid, including interest, the consequential damages portion equaled $2,613,479.45 and the attorneys' fees amounted to $832,400.00.

5

June 1, 2016 on the Debtor's setoff and interim payment applications provided certain assurances to Pershing that the remainder of the funds would remain intact pending confirmation, to secure any prospective recovery that Pershing might obtain.

16. Contrary to the impression purveyed by the Debtor in its disclosure statements and other proceedings, the motion to vacate the Award raises serious and potentially successful arguments. Although the New York Supreme Court Justice reserved decision on the underlying application to vacate the Award, the court emphatically denied the Debtor's motion to sanction Pershing for what the Debtor has steadfastly insisted was a groundless application to vacate the Award and threatened the Debtor with *sua sponte* sanctions of its own. Specifically on this point, the New York Justice stated:

> You made a motion for sanctions. That was not a good motion to make and I'm tempted to charge you for it. But I am telling you right now, I deny the motion for sanctions. I really am tempted to charge you for that motion but I won't. But this is clearly not a sanctionable position. I see the argument here and I really wish you hadn't made that motion, because in fact it takes away from the legitimacy of your cross-motion to confirm the award.

(Ex. A, Transcript, at 13.)[3]

17. Here, while the New York Justice has yet to rule, the tenor of the entire argument demonstrates that a significant portion of the Award is indeed at risk, along with the Plan on which it relies for funding. This is consistent with New York law holding that (a) an arbitration award must yield to public policy, *Garrity v. Lyle Stuart Inc.*, 40 N.Y.2d 354, 353 N.E.2d 793, 386 N.Y.S.2d 831 (1976); (b) the adjudication of consequential damages is a matter of

---

[3] This should also dispose of the Debtor's pending motion for sanctions in this Court as *res judicata*, as the motion, confusing as it may be, is essentially premised on the notion that Pershing's New York petition to vacate the Award was frivolous.

overriding public policy, *compare Gentile v. Garden City Alarm Co.,* 147 A.D.2d. 124, 131, 541 N.Y.S.2d 505 (2d Dep't 1989) (explaining "grossly negligent" conduct exception) *with Metropolitan Life Insurance Co. v. Noble Lowndes International, Inc.*, 84 N.Y.2d 430, 643 N.E.2d 504, 618 N.Y.S.2d 882 (1994) and *Martin v. Martin*, 5 A.D.2d 307, 172 N.Y.S.2d 636 (2d Dep't 1958) (freedom of contract policy prevails); and (c), as a matter of law, no exception applies to a consequential damages limitation where the breaching party "was motivated exclusively by its own economic self-interest," *Met. Life v. Noble Lowndes*, 84 N.Y.2d at 438-39, 643 N.E.2d 504, 618 N.Y.S.2d 882.

18.    While the issues will ultimately be determined by the New York court, a brief review of the applicable law attests to the merits of Pershing's position and the consequent endangerment of the essential funding for the Modified Plan. The two major issues – the arbitrators' awards of consequential damages and attorneys' fees to the Debtor – implicate well entrenched New York public policies and are therefore subject to review by the court without the normal deference given to arbitration.

19.    Consequential damage exclusions implicate competing public policies, freedom of contract, on the one hand, and the deterrence of grossly negligent, willful, or malicious conduct on the other. *Compare, e.g., Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685, 695, 636 N.Y.S.2d 734, 660 N.E.2d 415 (1995) (absent countervailing public policy concerns, New York courts will not relieve sophisticated parties of the consequences of their bargain) with *Gentile v. Garden City Alarm Co.*, 147 A.D.2d at 131, 541 N.Y.S.2d 505 (explaining "grossly negligent" conduct exception). Using a public policy analysis, the New York Court of Appeals has come down squarely in favor of the freedom of contract policy,

barring the "willful acts" exception to a consequential damages limitation where the breaching party "was motivated exclusively by its own economic self-interest." *Metropolitan Life Insurance Co. v. Noble Lowndes International, Inc.*, 84 N.Y.2d at 437-39, 643 N.E.2d 504, 618 N.Y.S.2d 882. Here, there is no question that Pershing was driven by its effort to avoid a potential billion dollar loss caused by Rochdale's trader. *See also Miller v. Continental Ins. Co.*, 40 N.Y.2d 675, 679, 389 N.Y.S.2d 565, 358 N.E.2d 258 (1976) (quoting *Baltimore & Ohio Ry. Co. v. Voigt*, 176 U.S. 498 (1900)) ("the right of private contract is no small part of the liberty of the citizen, and the usual and most important function of courts of justice is rather to maintain and enforce contracts than to enable parties thereto to escape from their obligation on the pretext of public policy, unless it clearly appears that they contravene public right or the public welfare").

20.    It bears noting that the contract between Pershing and the Debtor could not have been clearer that the allocation of risk was placed on the Debtor, and any consequential damages were excluded, *inter alia*, in consideration of the miniscule charge rendered by Pershing for its clearing services ($697). Article 17 of their agreement specifically states:

> As between the parties, neither party shall be liable for special, indirect, incidental, consequential or punitive damages, whether such damages are incurred or experienced as a result of entering into or relying on this Agreement or otherwise, even if the parties have been advised of the possibility of such damages . . . Broker [the Debtor] acknowledges and agrees that the fees charged by Pershing reflect the allocation of risks including, but not limited to, any limitations of liability set forth in this Agreement. A modification of the allocation of risks set forth in this Agreement would affect the fees charged by Pershing, and in consideration of such fees, Broker agrees to such allocation of risks.

21. Even beyond the public policy considerations that bar consequential damages here, the line of deference to arbitration awards is drawn no further than the point where the award eviscerates the parties' expressed contractual intentions. *See Solow Bldg. Co., LLC v. Morgan Guar. Trust Co. of N.Y.,* 30 A.D.3d 273, 818 N.Y.S.2d 31 (1st Dep't 2006); *United Paperworks Int'l Union v. Misco, Inc*., 484 U.S. 29, 38 (1987) (the reviewing court must "ensure" that the arbitrators did not "ignore the plain language of the contract").[4]

22. While, as the New York Justice herself pointed out, much of her questioning was probing or Socratic, it is clear from the transcript of argument that she agreed with these legal principles. In addressing Pershing's counsel, she noted unqualifiedly, "I do agree with you that it would exceed an arbitrator's authority to award damages the parties specifically excluded from their contract." Later, addressing the Debtor's counsel, the court declared that "just calling it consequential damages, loss of business damages, gives me huge pause in that regard because that's exactly what this contractual provision is trying to prevent. Because they're only getting paid $967 [*sic*], or whatever it is, to clear this trade. Their potential liability on the claim is a billion dollars. So there is no possible way that I can see consequential damages without saying . . . I'm saying to you that I don't see how that consequential damages part can stand. I honestly just don't. Maybe you're correct. I don't see how anyone could not -- it is irrational. I don't like to use the word "irrational," but it is beyond the pale, in my view, to say that there was no preservation mode here, which you have to find under New York law." (Ex. A, Transcript at 31-

---

[4] The same public policy considerations command the rejection of the inexplicable and erroneous award of attorneys' fees to Rochdale. The American Rule is enforced in New York as a matter of public policy. *Horwitz v. 1025 Fifth Ave., Inc.*, 34 A.D.3d 248, 249 (1st Dep't 2006) ("New York public policy disfavors any award of attorneys' fees to the prevailing party in a litigation"). Given the absence of any statutory or contractual fee-shifting provisions for Rochdale's claims, the Award should be vacated on the additional ground of public policy.

9

32.)    The Debtor's refrain that the arbitrators must have found some type of exceptional misconduct here, even if somehow true, cannot save the award of consequential damages, as New York law and public policy recognize a safe harbor for consequential damage exclusions where the defendant "was motivated exclusively by its own economic self-interest." *Met. Life v. Noble Lowndes*, 84 N.Y.2d at 437-39, 643 N.E.2d 504, 618 N.Y.S.2d 882. In fact, the jury in *Metropolitan Life* had specifically found the defendant liable for willful misconduct, but New York's highest court found on appeal that, as a matter of law and public policy, a consequential damages exclusion still prevails where the defendant was motivated by its own interest. Thus, even if the arbitrators considered the contract and found that Pershing acted willfully or maliciously in violation, public policy nevertheless rendered them powerless to award consequential damages. *See Garrity v. Lyle Stuart Inc.*, 40 N.Y.2d 354, 353 N.E.2d 793, 386 N.Y.S.2d 831.

23.    Here, of course, Pershing's motivation in liquidating the portfolio was to limit its exposure for almost $1 billion resulting from the Debtor's employee's illegal trades. The arbitrators did not find, nor did or could the Debtor even allege, that Pershing had a different purpose.[5] Thus, the court would be rewriting New York law by confirming the Award.

24.    The New York court's pronouncement, together with the law on which it is based, is significant, as it is central to Pershing's point in opposing the Disclosure Statement and Plan that, the Debtor's overconfidence notwithstanding, it is a very realistic risk, if not a likelihood, that at least $2,613,800 ($2 million in consequential damages plus nine percent interest) – more

---

[5] The gravamen of the Debtor's claim was that Pershing allegedly liquidated the portfolio without giving a portion of the advance notice required by the contract.

than one-third of the net award – may be vacated and unavailable to fund the Plan.  Such an outcome would render the Plan untenable.

25.     Pershing continues to submit that the Court should defer any action on any plan until the New York court renders its determination.  The oral argument and denial of sanctions in New York on June 30, 2016 undermine the Debtor's premise that confirmation of the Award, and therefore its Plan, are all but assured.  If indeed the Award suffers a significant reduction, the Court, notwithstanding the laudable intention of confirming a plan, should be concerned with expending the finite resources of the Debtor on a plan that is, at best, of uncertain viability until the New York court has ruled.  *See Pizza of Hawaii Inc. v. Shakey's, Inc. (In re Pizza of Hawaii, Inc.)*, 761 F.2d 1374 (9th Cir. 1985) (a plan is not confirmable unless and until it properly accounts for open and unresolved litigation); *see also In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 981 (Bankr. N.D.N.Y. 1988); *In re Quigley Co.*, 377 B.R. 110, 115-116 (Bankr. S.D.N.Y. 2007); *In re Filex*, 116 B.R. 37, 41 (Bankr. S.D.N.Y. 1990); *cf., In re Atlanta West VI*, 91 B.R. 620, 622 (Bankr. N.D. Ga. 1988) (if a plan on its face cannot be confirmed, it is incumbent on a bankruptcy court to decline approval of the disclosure statement in order to prevent the diminution in the value of the estate that would result from the expense of soliciting votes and seeking confirmation of a patently unconfirmable plan).[6]

26.     *Pizza of Hawaii* closely parallels the circumstances of this case.  There, the debtor sought bankruptcy protection after plaintiff sued the debtor and its principals for breach of

---

[6] A decision on the New York motion should be imminent.  N.Y.C.P.L.R. 2219 requires that determination of a motion "shall be made within sixty days, after the motion is submitted for decision."  To ensure enforcement of this rule in the Commercial Division, the Division's Rule 23 requires: "If 60 days have elapsed after a motion has been finally submitted or oral argument held, whichever was later, and no decision has been issued by the court, counsel for the movant shall send the court a letter alerting it to this fact with copies to all parties to the motion."  22 N.Y.C.R.R. §202.70(g).

contract and trademark infringement. The bankruptcy court confirmed a plan of reorganization even though the litigation was still pending and unresolved. The court of appeals affirmed the district court's reversal of confirmation, "agree[ing] with the district court that the bankruptcy court's finding of feasibility was clearly erroneous because the plan failed to provide for the possibility that Shakey's would recover a large judgment in the civil case." Here, too, the Modified Plan makes no meaningful provision for any modification of the Award. *See also Search Mkt. Direct, Inc. v. Jubber (In re Paige),* 685 F.3d 1160 (10th Cir. 2012) (plan was not feasible where it did not provide sufficient funds to resolve a pending claim for breach of contract and if claim were to succeed, the plan trustee might seek disgorgement from creditors who had already been paid).

27. In fact, the situation is more compelling in the present case. In *Pizza of Hawaii*, the amount of the pending claim was unliquidated and had not even been estimated by the bankruptcy court, making the ultimate effect on the plan unknown. Here, by contrast, we know the amounts of the Award and each of the two most faulty components. It is therefore known with virtual certainty that even a partial reversal would doom the Modified Plan, making the Modified Plan even less feasible than the one rejected in *Pizza of Hawaii*.[7]

28. Equally instructive is *In re Harbin,* 486 F.3d 510, *supra.* There, the court of appeals held that a bankruptcy court commits clear error when it approves a plan that fails to provide for the possibility of success in a claimant's pending state court litigation against the debtor. In that case, akin to the very situation here, the debtor had prevailed in the trial court but an appeal was pending at the time of confirmation. Given the stance of the debtor as the victor at

---

[7] The Modified Plan also proposes to award $2,263,520 in contingency fees to the Debtor's counsel for services in the arbitration. If the Award is vacated or modified, this amount must be reduced as well.

that point in time, the bankruptcy court, dismissive of the claimant's prospects on appeal, confirmed the plan. The Ninth Circuit held, however, that the bankruptcy court was required to consider the impact of a possible later reversal, even at the time that the debtor was the prevailing party. (Interestingly enough, the state appeals court also reversed, vindicating the rule that the plan and confirmation process must account for the possibility of the debtor's loss in pending litigation, including pending appeals, even if the debtor was the prevailing party at the time.) Thus, *Harbin* commands rejection of the Plan here, which fails to consider or account in any way for a modification of the Award by the state court.

29.    As a related matter, the Modified Plan potentially violates the bankruptcy code's absolute priority rule. Under 11 U.S.C. §1129(b), in addition to not discriminating unfairly, a plan must be "fair and equitable." A plan is fair and equitable if "(i) no class senior is paid more than in full and (ii) no class junior will receive or retain any interest in property under the Plan." *In re Union Fin. Serv. Group, Inc.*, 303 B.R. 390, 423 (Bankr. E.D. Mo. 2003). Section 1129 requires that for a plan to properly avoid full payment to a class of rejecting unsecured claims, "the holder of any claim or interest that is junior to the claims of such class [may] not receive or retain under the plan on account of such junior claim or interest any property." 11 U.S.C. §1129(b)(2)(B)(ii). Stated simply, "the provision bars old equity from receiving any property via a reorganization plan 'on account of' its prior equitable ownership when all senior claim classes are not paid in full." *Bonner Mall P'ship v. U.S. Bancorp Mortgage Co. (In re Bonner Mall P'ship)*, 2 F.3d 899, 908 (9th Cir. 1993).

30.    The Debtor contends that Section 1129(b) is not applicable because no class of creditors will be impaired. But for the reasons stated above, the pendency of the New York

litigation renders this conclusion uncertain and speculative. If the Award is vacated, all classes face impairment. If the Award is modified, at least some classes senior to the equity interests will be impaired. The current equity holders offer no new value of their own.

31. Finally, the Modified Plan lacks any basic provision to cover a significant change to the Award by the New York courts. For example, it contains no provision to protect Pershing's interests as a creditor under these circumstances and does not explicitly preserve Pershing's right to continue its challenge to the Award. Pershing has the potential to become the largest creditor of the reorganized Debtor, with a clear and present risk of hurtling the Debtor back into bankruptcy if the Award is modified as a result of the pending New York petition or other legal action.

32. The Modified Plan contains only the nebulous statement that "the Plan shall not become effective unless and until . . . Debtor possesses the ability to use the Award Payment to fund all of the disbursements required in the Plan and in accordance with the Bankruptcy Code." (Sec. 9.2.) In Section VII(B)(4) at page 18 of the proposed First Amended Disclosure Statement, however, the Debtor contends that "[c]onfirmation of the Plan is not dependent upon the adjudication of Pershing's Vacatur Petition because there exists no legal impediment to the Debtor's use of the Award Payment in a manner consistent with the Bankruptcy Code and in accordance with the Plan." Through this obfuscatory pairing, the Debtor is creating at best an unacceptable ambiguity and, more likely, the groundwork for justifying distributions to other creditors, itself, its attorneys and its equity holders before the pending litigation is resolved.

33. While Pershing fully appreciates the Court's desire to expedite confirmation of a plan, the balance of the equities and the interest of efficiency weigh against confirmation before

Pershing's litigation is concluded. To the extent that the Modified Plan and the timing of confirmation are designed to relieve the Court and interested parties of the burdens of this case, the Debtor's proposals carry a strong risk of the opposite impact. Not only does the Modified Plan simply wish away an adverse fate for the Award and fail to protect Pershing's interests, but Article XI includes a sweeping retention of jurisdiction by this Court, thereby auguring more rather than less future entanglement for the Court if the Modified Plan is confirmed too hastily or without necessary contingencies.

34. Because the Debtor has resolved and made payment on the only other major dispute in this bankruptcy case (the Altschul Trust claims), and Pershing has no interest in this case other than as relates to the Award proceeds, deferral of confirmation would only serve to simplify the proceedings. If the Award stands, the Debtor will have its wish, all classes will be unimpaired and confirmation should proceed smoothly, simply and without any likely challenge. On the other hand, the proposed plan cannot survive the modification of the Award, a result that would render the confirmation process a wasted effort and force the parties and the Court to start virtually anew. If, despite these uncertainties, a plan is to be confirmed, it should state explicitly that no funds shall be expended unless and until the Award has been finally adjudicated in the New York courts.

35. Pershing submits that the First Modified Plan of Reorganization should be rejected.

Dated at New Haven, Connecticut this 22nd day of August, 2016.

    /s/ *David H. Pikus*
David H. Pikus
BRESSLER, AMERY & ROSS, P.C.
17 State Street
New York, New York  10004
Telephone: (212) 425-9300
dpikus@bressler.com
*Attorneys for Pershing, LLC*

-and-

    /s/ *Barbara H. Katz*
Barbara H. Katz
57 Trumbull Street
New Haven, Connecticut 06510-1004
Telephone: (203) 772-4828
barbarakatz@snet.net
ct 06946
*Local Counsel for Pershing, LLC*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

|  |  |  |
|---|---|---|
| In Re: | : | |
| | : | Chapter 11 |
| ROCHDALE SECURITIES, LLC | : | |
| | : | Case No. 14-51485 (AST) |
| Debtor. | : | |
| | : | August 22, 2016 |

**CERTIFICATION OF SERVICE**

Barbara H. Katz hereby certifies that a copy of the foregoing OBJECTION OF PERSHING LLC TO DEBTOR'S FIRST MODIFIED PLAN OF REORGANIZATION was sent on the 22nd day of August, 2016 electronically to all parties receiving ECF notice.

 /s/ *Barbara H. Katz*
Barbara H. Katz